MICHAEL CAVARRETTA, Plaintiff-Appellee, v. THE DEPARTMENT OF CHILDREN AND FAMILY SERVICES *et al.*, Defendants-Appellants (Community Consolidated School District No. 47, Defendant).

Second District   No. 2—95—0462

Opinion filed January 5, 1996.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Jan E. Hughes, Assistant Attorney General, of counsel), for appellants.

Allen J. Oehlert, of Loewenstein, Hagen, Oehlert & Smith, P.C., of Springfield, for appellee.

Wayne F. Plaza, of Rooks, Pitts & Poust, of Chicago, for Community Consolidated School District No. 47.

PRESIDING JUSTICE McLAREN delivered the opinion of the court:

Sterling Ryder, former Director of the Illinois Department of Children and Family Services (DCFS), Jess McDonald, Director of the DCFS, and Ann Breen-Greco, DCFS administrative law judge (ALJ) (hereinafter defendants), bring this appeal. The defendants seek review of a decision of the trial court of Lake County. The trial court reversed the decision of the ALJ. The ALJ refused to expunge from the State register a report of an "indicated" finding of sexual molestation by the plaintiff, Michael Cavarretta, of a female junior high school student. The trial court found that DCFS violated the plaintiff's due process rights by failing to hold a timely administrative hearing and render a timely decision. The defendants appeal the trial court's decision. We affirm.

We begin our discussion with an overview of the Abused and Neglected Child Reporting Act (Act) (325 ILCS 5/1 et seq. (West 1994)). The Act provides that DCFS shall receive and investigate reports of child abuse or neglect made under the Act and maintain a State register of all such cases. (325 ILCS 5/7.3, 7.7 (West 1994).) After DCFS receives a report of suspected child abuse or neglect, DCFS forwards the report to the State register. (325 ILCS 5/7.10 (West 1994).) Thereafter, DCFS investigates the report (325 ILCS 5/7.4(b)(3) (West 1994)) to determine whether the report is "indicated" or "unfounded" within 60 days (325 ILCS 5/7.12 (West 1994)) and reports the determination to the State register (325 ILCS 5/7.12 (West 1994)). If DCFS determines "that credible evidence of the alleged abuse or neglect exists," the report is deemed "indicated." (325 ILCS 5/3 (West 1994).) If DCFS determines "that no credible evidence of abuse or neglect exists," the report is deemed "unfounded." (325 ILCS 5/3 (West 1994).) If DCFS is unable to "initiate or complete an investigation on the basis of information provided to the Department," or is unable to do so within 60 days, the report is deemed "undetermined." (325 ILCS 5/3, 7.12 (West 1994).) The Illinois Administrative Code (Code) provides that DCFS must make its determination within 60 days of the complaint. 89 Ill. Adm. Code § 300.90(d) (1994).

After DCFS sends notice of the determination to the subject of the report, the subject may request DCFS to expunge or amend the

report within 60 days. (325 ILCS 5/7.16 (West 1994).) If DCFS denies the request or fails to act within 30 days:

"[T]he subject shall have the right to a hearing *** to determine whether the record of the report should be amended, expunged, or removed on the grounds that it is inaccurate or it is being maintained in a manner inconsistent with [the] Act." (325 ILCS 5/7.16 (West 1994).)

The hearing "shall be held within a *reasonable* time after the subject's request." (Emphasis added.) (325 ILCS 5/7.16 (West 1994).) Moreover, the Code provides: "The Administrator of the Administrative Hearing Unit shall *** schedule the hearing at a date *within 30 calendar days* of the date [of] the appellant's written notice stating that the" issue was not resolved "to the appellant's satisfaction." (Emphasis added.) 89 Ill. Adm. Code § 336.110(d)(1) (1994).

At the hearing, DCFS has the burden of proving the accuracy and consistency of the record. Further, the ALJ's "decision shall be made, in writing, at the close of the hearing, *or within 30 days thereof.*" (Emphasis added.) (325 ILCS 5/7.16 (West 1994).) The ALJ must base its recommendation on whether there is "credible evidence of abuse or neglect." (89 Ill. Adm. Code § 336.130(b)(14) (1994).) The DCFS Director's decision to adopt, modify, or disagree with the ALJ's recommendation must be "based upon the credible evidence standard." (89 Ill. Adm. Code § 336.150(a) (1994).) "Decisions of the [DCFS] *** are administrative decisions subject to judicial review under the Administrative Review Law [(735 ILCS 5/3—101 *et seq.* (West 1994))]." 325 ILCS 5/7.16 (West 1994).

In the instant case, on February 26, 1992, DCFS received a report from Richard Carlstadt, the principal of Lundahl Junior High School, alleging that the plaintiff, a physical education teacher at the school, fondled and tickled C.M., a 14-year-old female student, on February 19, 1992. DCFS began its investigation on February 27, 1992. The record does not indicate when DCFS completed its investigation. However, by April 24, 1992, 58 days after the investigation began, the State register was informed that DCFS determined that the report was "indicated." On May 14, 1992, DCFS notified the plaintiff that the "indicated" report would be placed in the State register, 78 days after DCFS began its investigation. The plaintiff requested that DCFS expunge the report. The record does not reveal when DCFS received the request. However, the request form was dated June 8, 1992. On July 27, 1992, a DCFS child protection manager determined that credible evidence existed in the record, and on August 19, 1992, DCFS notified the plaintiff that the review panel denied his request for expungement.

On August 28, 1992, the plaintiff requested an administrative hearing on the issue. On September 17, 1992, DCFS sent the plaintiff a letter regarding the plaintiff's request for an administrative hearing. The DCFS letter stated in relevant part:

"Due to the numerous requests for administrative hearings that this office receives, we will not be able to schedule your requested hearing for several months. However, approximately one month before the hearing is scheduled, someone from this office will either contact you or send you a notice concerning the scheduling of the hearing."

On May 24, 1993, DCFS notified the plaintiff that the hearing was scheduled for June 23, 1993, 299 days after the plaintiff made his request. The parties agreed to continue the hearing until August 10, 1993. The record does not indicate which party made the request for the continuance. An administrative hearing was held on September 2, September 8, and October 14, 1993.

On April 1, 1994, 581 days after the plaintiff appealed the DCFS decision and 169 days after the last day of testimony, the ALJ issued her recommendation and opinion. The ALJ found that there was "credible evidence" that the plaintiff sexually molested C.M. and, thus, denied the plaintiff's request for expungement of the record from the State register. The DCFS Director adopted the ALJ's recommendation and opinion on April 18, 1994.

The plaintiff timely appealed to the trial court and argued that: (1) DCFS deprived the plaintiff of due process by failing to meet time line requirements, using the credible evidence standard, failing to call C.M. as a witness, using an ALJ from DCFS, and allowing improper pressures to be applied to the scheduling, processing, evidentiary rulings, and deliberations; (2) DCFS failed and refused to provide the plaintiff with an unexpurgated copy of the DCFS file; (3) section 3 of the Act is unconstitutional as written and as applied; (4) the ALJ erroneously admitted DCFS records into evidence; (5) DCFS failed to prove its case; (6) the plaintiff should have been allowed to comment on the ALJ's opinion before the DCFS Director adopted the opinion; (7) DCFS' decision was improperly based on hearsay; and (8) double jeopardy barred the case. The trial court reversed the ALJ decision and ordered DCFS to expunge the plaintiff's record. The trial court relied on *Stull v. Department of Children & Family Services* and found that DCFS violated the plaintiff's due process rights by delaying the appeal process. (*Stull v. Department of Children & Family Services* (1992), 239 Ill. App. 3d 325.) The trial court did not determine whether the ALJ's decision was against the manifest weight of the evidence.

On appeal, the defendants argue that the plaintiff's due process rights were not violated. The defendants claim that neither the lack of strict compliance with the statutory and regulatory time frames nor the application of the "credible evidence" standard violated the plaintiff's due process rights. In addition, DCFS claims that the ALJ's decision to deny plaintiff's request to expunge the "indicated" report was neither against the manifest weight of the evidence nor contrary to law.

Initially, we note our standard of review. The Act provides that judicial review of DCFS final decisions will be in accordance with the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 1994)). (325 ILCS 5/11.6 (West 1994).) The Administrative Review Law states that our review "shall extend to all questions of law and fact presented by the entire record before the court." (735 ILCS 5/3—110 (West 1994).) Further, "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." (735 ILCS 5/3—110 (West 1994).) However, the findings of the administrative agency on questions of law are not binding on this court. *DiFoggio v. Retirement Board of the County Employees Annuity & Benefit Fund* (1993), 156 Ill. 2d 377, 381.

Administrative proceedings are governed by the fundamental principles and requirements of due process of law. (*Abrahamson v. Illinois Department of Professional Regulation* (1992), 153 Ill. 2d 76, 92.) The due process clause of the fourteenth amendment to the United States Constitution provides that life, liberty, and property cannot be deprived absent due process. (U.S. Const., amends. V, XIV; *Cleveland Board of Education v. Loudermill* (1985), 470 U.S. 532, 541, 84 L. Ed. 2d 494, 503, 105 S. Ct. 1487, 1493.) Therefore, we must determine: (1) whether being placed on the State register of suspected child abusers in accordance with the Act implicates a constitutionally protected interest; and, (2) if so, whether the plaintiff was deprived of the interest without due process of law. *Kentucky Department of Corrections v. Thompson* (1989), 490 U.S. 454, 460, 104 L. Ed. 2d 506, 514, 109 S. Ct. 1904, 1908.

It is well established that damage to a person's reputation alone is not sufficient to implicate a Federal liberty interest. (*Paul v. Davis* (1976), 424 U.S. 693, 701, 47 L. Ed. 2d 405, 414, 96 S. Ct. 1155, 1161.) However, stigmatization plus the loss of present or future government employment is sufficient to rise to the level of a protectible liberty interest. (*Paul*, 424 U.S. at 702-10, 47 L. Ed. 2d at 414-19, 96 S. Ct. at 1161-65.) A Federal liberty interest is implicated when a "person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." *Wisconsin v. Con-*

*stantineau* (1971), 400 U.S. 433, 437, 27 L. Ed. 2d 515, 519, 91 S. Ct. 507, 510.

We agree with the Illinois Appellate Court, Fifth District, that being placed on the State register of suspected child abusers implicates a Federal liberty interest. (*Stull*, 239 Ill. App. 3d at 335.) A subject of an "indicated" report may be prohibited from working in certain professions, such as child care and teaching. (225 ILCS 10/8(9) (West 1994).) The Child Care Act of 1969 provides:

> "The Department may revoke or refuse to renew the license of any child care facility or refuse to issue full license to the holder of a permit should the licensee or holder of a permit:
>
> * * *
>
> *** be the subject of an indicated report under Section 3 of [the Act] or fail to discharge or sever affiliation with the child care facility of an employee or volunteer at the facility with direct contact with children who is the subject of an indicated report under Section 3 of that Act." 225 ILCS 10/8(9) (West 1994).

In addition, a teacher placed on the State register may have a difficult time retaining or acquiring a teaching position. A teacher placed on the State register of suspected child abusers may lose his teaching certificate. (105 ILCS 5/21—23(b) (West 1994).) Further, a school may be liable for injuries to students if the school district is guilty of willful and wanton misconduct. (*Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 173.) Accordingly, a school district may be liable for the willful and wanton hiring of someone who is unfit for a teaching job. *Fallon v. Indian Trail School, Addison Township School District No. 4* (1986), 148 Ill. App. 3d 931, 935.

■ Moreover, the list of persons who have access to the records in the State register is considerable. The list includes: State police, physicians, grand juries, legal supervisors of children, law enforcement agencies, school superintendents, welfare agencies, and "[a]ny person authorized by the Director *** for *** research purposes." (325 ILCS 5/11.1(10) (West 1994).) After considering the burden the law places on educational employers to keep schools and child care facilities safe for children, we determine that Mr. Cavarretta, the subject of an "indicated" report in accordance with the Act, was deprived of a liberty interest protected by the due process clause of the United States Constitution. *Stull*, 239 Ill. App. 3d at 335; see also *Valmonte v. Bane* (2d Cir. 1994), 18 F.3d 992, 1002.

■ The defendants argue that, because placement of the plaintiff's name has not resulted in an adverse employment decision, no liberty interest is implicated. The defendants cite to *Lewis v. Department of Children & Family Services* to support their argument. (*Lewis v.*

*Department of Children & Family Services* (N.D. Ill. June 10, 1994), No. 93—C—2908.) Initially, we note that we are not bound by a Federal court decision other than a decision of the United States Supreme Court. (*People v. Fern* (1993), 240 Ill. App. 3d 1031, 1039.) Nevertheless, we will discuss the Federal case cited by the defendants. In *Lewis*, the United States District Court for the Northern District of Illinois found that a female teacher who was the subject of an "indicated" finding and placed on the State register in accordance with the Act was not deprived of due process. Accordingly, the court dismissed the plaintiff's State claim seeking a writ of *mandamus* ordering DCFS and its Director to expunge the reports registered against her and her Federal civil rights claim under section 1983 of the Civil Rights Act (42 U.S.C. § 1983 (1988)), alleging a due process violation. The court reasoned that, because the teacher did not establish that the report caused an adverse employment decision, she failed to establish that she was deprived of a constitutionally protected interest. (*Lewis*, No. 93—C—2908.) The *Lewis* court reasoned that the plaintiff's harm was only speculative because the report was not incident to an adverse employment decision. *Lewis*, No. 93—C—2908.

We disagree with the analysis in *Lewis*. In dismissing the writ of *mandamus*, the *Lewis* court erroneously relied on *Siegert v. Gilley* (1991), 500 U.S. 226, 114 L. Ed. 2d 277, 111 S. Ct. 1789. In *Siegert*, the plaintiff's former government supervisor wrote an allegedly defamatory letter to a prospective government supervisor. (*Siegert*, 500 U.S. at 228, 114 L. Ed. 2d at 285, 111 S. Ct. at 1791.) As a result of the contents of the letter, the plaintiff was denied credentials and was terminated from his government position. (*Siegert*, 500 U.S. at 228, 114 L. Ed. 2d at 285, 111 S. Ct. at 1791.) Further, the plaintiff, a psychologist, was unable to secure appropriate employment in his field and was limited to working with adults. (*Siegert*, 500 U.S. at 229, 114 L. Ed. 2d at 285, 111 S. Ct. at 1792.) The Supreme Court held that the plaintiff's civil rights claim against his former government supervisor should have been dismissed because the plaintiff failed to establish that he was deprived of a liberty interest. *Siegert*, 500 U.S. at 234, 114 L. Ed. 2d at 288, 111 S. Ct. at 1794.

*Lewis* and the instant case are distinguishable from *Siegert* because the plaintiff in *Siegert* sought damages for a constitutional tort, not a writ of *mandamus*, whereas the plaintiffs in *Lewis* and the instant case sought expungement of a defamatory public record which was published by the State, allegedly without due process of law. Further, we find a great demarcation between the negative reference letter in *Siegert* and the "indicated" reports in *Lewis* and the case at

bar. In *Siegert*, the plaintiff was defamed by a mere letter to one potential employer from one individual, whereas in *Lewis* and the case at bar the State labeled the plaintiffs "suspected child molesters" and placed their names on State-maintained lists. The Act causes *more* than an injury to reputation. Being placed on the State register of suspected child abusers is not merely a negative reference from a previous employer. Instead, as discussed above, the report could, effectively, preclude the plaintiff from working in any capacity in his chosen profession and in the child care profession as well.

Further, we find the *Lewis* court's distinction of *Valmonte* (18 F.3d 992) erroneous. In *Valmonte*, the court of appeals held that the New York statute (N.Y. Soc. Serv. Law §§ 411 through 428 (McKinney 1992) (as amended 1993)), which closely resembles the Illinois Act, implicates a Federal liberty interest. (*Valmonte*, 18 F.3d at 1002.) However, the *Lewis* court declined to adopt the reasoning in *Valmonte* because, unlike Illinois, the New York statute requires childcare employers to determine whether a potential employee is listed on the New York State register. (*Lewis*, No. 93—C—2908.) We find this distinction immaterial. The Act, like the New York statute, "places a tangible burden on [the plaintiff's] employment prospects." (*Valmonte*, 18 F.3d at 1001.) Although the burden in Illinois is not codified, the burden, nonetheless, exists. Educational and child-care employers may be obligated under the Illinois Tort Immunity Act to reject applicants who are listed as suspected child molesters in the State register. (*Fallon*, 148 Ill. App. 3d at 935.) Therefore, we determine that a person placed on the State register of suspected child abusers in accordance with the Act has a due process right protected by the United States Constitution. U.S. Const., amend. XIV.

In addition, we believe that a person placed on the State register of suspected child abusers in accordance with the Act has a due process right protected by the Illinois Constitution. (Ill. Const. 1970, art. I, § 2.) The Illinois Constitution has a long history of providing protection for one's reputation (Ill. Const. 1818, art. VIII, § 1; Ill. Const. 1870, art. II, § 19; Ill. Const. 1970, art. I, § 12) and character (Ill. Const. 1818, art. VIII, § 12; Ill. Const. 1848, art. XIII, § 12). (*Troman v. Wood* (1975), 62 Ill. 2d 184, 194-95.) Our supreme court stated that "the constitutions of this State have from the outset recognized as fundamental the rights of 'enjoying and defending life and liberty, and acquiring, possessing and protecting property and reputation.' " (*Troman*, 62 Ill. 2d at 194, quoting Ill. Const. 1818, art. VIII, § 1.) Because the subject of an "indicated" report in the State register will undoubtedly suffer great damage to his reputation, we determine

that being placed on the State register of suspected child abusers without due process violates the Illinois Constitution. Ill. Const. 1970, art. I, § 2.

We must now determine whether the administrative procedures provided the plaintiff with due process. DCFS claims that the time delays did not constitute a violation of the plaintiff's due process rights because: DCFS was only nine days late in completing its investigation; the plaintiff waived his right to a hearing within a reasonable time; DCFS was not late in issuing its final decision; the regulatory and statutory time frames are merely directive and not mandatory; and the public interest far outweighs the plaintiff's need for timely action. The plaintiff asserts that his due process rights were violated by the numerous time delays and the burden of proof required by the Act and the Code. We agree with the plaintiff.

We first address the time delay issue. The United States Supreme Court has stated that due process requires, *inter alia*, a hearing at a meaningful time. (*Loudermill*, 470 U.S. at 547, 84 L. Ed. 2d at 507, 105 S. Ct. at 1496.) Further, the Act provides that the DCFS Director must issue a final decision within 30 days after the hearing record is complete. (325 ILCS 5/7.16 (West 1994).) In addition, the Act states that DCFS must provide an administrative hearing within a reasonable time. (325 ILCS 5/7.16 (West 1994).) In determining what a reasonable time means, we are guided by the Code, which provides that an administrative hearing will be provided within 30 days of a request. (89 Ill. Adm. Code § 336.110(d)(1) (1994).) In addition, we note that administrative agencies derive power from the legislature and, therefore, must comply with the procedures and rules promulgated by that body. (*Illinois Power Co. v. Pollution Control Board* (1985), 137 Ill. App. 3d 449, 452.) Accordingly, it has been held that a gross deviation from the 30-day time frame is a violation of a plaintiff's due process rights. *Stull*, 239 Ill. App. 3d 325.

We adopt the reasoning of the Appellate Court, Fifth District, in *Stull* (239 Ill. App. 3d 325). In *Stull*, DCFS entered an "indicated" report on the State register alleging that the plaintiff sexually molested two high school students. After an administrative hearing, DCFS refused to expunge the report. The plaintiff appealed. (*Stull*, 239 Ill. App. 3d at 329.) The trial court found that DCFS violated his procedural due process rights by failing to complete its investigation and provide the plaintiff with a hearing in a timely manner. (*Stull*, 239 Ill. App. 3d at 331.) The Appellate Court, Fifth District, discussed whether the 30-day hearing deadline set out in the Code is discretionary or mandatory. (*Stull*, 239 Ill. App. 3d at 330-34.) The court determined that it did not matter whether the Code provision was

discretionary or mandatory, because the time constraints set out by the Act and by the Code reflect the judgment of the legislature and the agency as to what constitutes a reasonable length of time in which the agency must act. (*Stull*, 239 Ill. App. 3d at 334.) The court stated that "a gross deviation from those time limitations would be deemed to be unreasonable and contrary to the legislative intent, evidenced by the setting of time limitations, that the agency act in a reasonably timely manner." (*Stull*, 239 Ill. App. 3d at 334.) In *Stull* the plaintiff's case was not heard until 347 days after he requested a hearing. Further, a final decision was not rendered until 456 days after the plaintiff's request for a hearing. (*Stull*, 239 Ill. App. 3d at 335.) The court concluded that the delay in the appeal process was unreasonable, thus depriving the plaintiff of his constitutional right to due process. *Stull*, 239 Ill. App. 3d at 335. But see *S.W. v. Department of Children & Family Services* (1995), 276 Ill. App. 3d 672 (Appellate Court, First District, indicated in *dicta* that a 166-day delay did not violate the plaintiff's due process rights).

We believe that the rule set forth in *Stull* is equally applicable in the case before us. The defendants acknowledge that the plaintiff requested a hearing on August 28, 1992, but DCFS did not schedule a hearing until June 23, 1993, 299 days after the plaintiff's request. Further, the DCFS Director issued his decision on April 18, 1994, 39 days after the hearing was complete and 598 days after the plaintiff requested a hearing. We determine that a 299-day delay in providing a hearing, a 9-day delay in issuing a final decision, and a 598-day delay in completing the appeals process is a gross deviation of the established time limits and thus a violation of the plaintiff's due process rights. Accordingly, we need not determine whether the other alleged time deviations warrant reversal.

The defendants argue that the instant case is distinguishable from *Stull* (239 Ill. App. 3d 325) because the plaintiff in *Stull* filed a motion to dismiss at the administrative hearing and the court delay in *Stull* was longer than the delay in the instant case. We find these arguments unpersuasive. We recognize that the plaintiff in the instant case did not file a motion to dismiss during the administrative hearing. However, we do not believe the plaintiff waived his right to a timely hearing because the trial court specifically found that the plaintiff raised the argument at the administrative hearing. In addition, we find the difference in delay immaterial. In *Stull*, the plaintiff's case was not heard until 347 days after he requested a hearing. In the instant case, the plaintiff suffered a 299-day delay. We agree with the trial court that the time distinction is "minimal at best." While we decline to define "reasonable time" as a precise

number of days, we determine that a 299-day delay from the agency's own rules is unreasonable and violates the requirements of due process.

■ In addition, the defendants argue that the plaintiff's only remedy for the unlawful delay of an administrative hearing is to proceed in *mandamus*. The defendants cite to *S.W.*, 276 Ill. App. 3d 672, and *Shawgo v. Department of Children & Family Services* (1989), 182 Ill. App. 3d 485, to support its argument. The defendants filed a motion to cite *S.W.*, 276 Ill. App. 3d 672, as additional authority. We grant the motion, but find both *S.W.* and *Shawgo* unpersuasive. The courts' statements in *S.W.* and *Shawgo* regarding *mandamus* were mere *dicta*. In *S.W.*, the court discussed *mandamus* only after it decided that the plaintiff's due process argument was waived. (276 Ill. App. 3d at 680.) Similarly, in *Shawgo*, the court discussed *mandamus* only after it decided that DCFS did not lose jurisdiction because of administrative delay. (*Shawgo*, 182 Ill. App. 3d at 489-90.) Further, the issue in *Shawgo* was whether or not the DCFS had jurisdiction and not, as in the instant case, whether the plaintiff's due process rights were violated. Finally, it is absurd to suggest that the *only* remedy for a due process violation by an administrative agency is to proceed in *mandamus*.

■ Next, the defendants argue that the plaintiff waived the time delay argument because he participated in the hearing and did not file a motion to dismiss. However, the cases cited by the defendants are distinguishable on their facts. In *City of Rockford v. County of Winnebago* (1989), 186 Ill. App. 3d 303, 310-11, and *Citizens Against the Randolph Landfill v. Pollution Control Board* (1988), 178 Ill. App. 3d 686, 694-95, the time delays were minimal (18 days and 27 days, respectively), and the delays did not stigmatize the petitioners (petitioners sought approval of a pollution control facility site). In *Edwards v. Illinois Racing Board* (1989), 187 Ill. App. 3d 287, the plaintiff asked for a continuance before the deadline arrived and did not raise the time delay argument at the hearing. (187 Ill. App. 3d at 290-91.) In *Brown v. Sexner* (1980), 85 Ill. App. 3d 139, there were no specific time requirements, and the plaintiff contributed to the time delay by failing to secure counsel. (*Brown*, 85 Ill. App. 3d at 151.) Finally, in *Cooper v. Department of Children & Family Services* (1992), 234 Ill. App. 3d 474, the plaintiff failed to raise the time delay argument at the hearing. In the instant case, the time delay was considerable, the trial court found that the plaintiff raised the delay argument at the hearing and DCFS exceeded its deadline before the plaintiff agreed to a continuance. Therefore, we find the cases cited by the defendants unpersuasive.

■ Finally, we address the issue of whether the "credible evidence" standard of review (89 Ill. Adm. Code §§ 336.130(b)(14), 336.150(a) (1994)) deprives a subject of due process. To evaluate the standard at issue, we must balance the following factors: (1) the nature of the private interest that may be affected by a particular decision; (2) the fairness and reliability of the existing procedure and the effect of additional procedural safeguards; and (3) the governmental interest. *Mathews v. Eldridge* (1976), 424 U.S. 319, 335, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 903.

■ The defendants claim that the degree of potential deprivation is minimal because inclusion on the State register results in merely a speculative deprivation. We disagree and determine that inclusion on the State register implicates the plaintiff's interest in pursuing his chosen occupation. *Stull*, 239 Ill. App. 3d 325; see *Valmonte*, 18 F.3d 992.

Under the second *Mathews* factor, we determine that the "credible evidence" standard renders the existing procedure unfair and unreliable. The Act provides that credible evidence "means that all the available facts, when viewed in light of surrounding circumstances, would cause a reasonable person to believe that a child was abused or neglected." (89 Ill. Adm. Code § 336.20 (1994).) Initially, we note that the "credible evidence" standard is no more stringent than the probable cause standard. Probable cause exists when all the facts and circumstances available at the time would cause a reasonably prudent person to believe that the suspect is committing or has committed a crime. (*People v. Montgomery* (1986), 112 Ill. 2d 517, 525; *People v. Lukach* (1994), 263 Ill. App. 3d 318, 323.) While probable cause is sufficient to *arrest* a suspect, the State must prove its case beyond a reasonable doubt to *convict* a defendant. However, under the Act, DCFS is not required to prove its case by a standard more stringent than "credible evidence." Further, the "credible evidence" standard is deficient because it does not require the fact finder to weigh conflicting evidence. This is especially unfair and unreliable in light of the nature of the testimony and the need to compare and contrast different versions of the same event. *Valmonte*, 18 F.3d at 1004.

Under the third *Mathews* factor, we recognize that the Act reflects the significant governmental interest in protecting children from abuse. However, we also recognize that the Act facilitates the deprivation of a significant individual interest by a standard of proof which presents a high risk of error. After weighing all of the relevant factors, we determine that the "credible evidence" standard deprives a subject of due process. (See *Valmonte*, 18 F.3d at 1004.)

Because an "indicated" on the State register may deprive one of his right to work in his chosen profession and cause great damage to his reputation, DCFS should at least be required to prove its case by a preponderance of the evidence. This standard would allow DCFS and the subject to share the risk of error, rather than have the accused bear the brunt of the risk. *Valmonte*, 18 F.3d at 1004.

Because we find that the plaintiff's due process rights were violated, we need not address whether the administrative law judge's decision that there was credible evidence that the plaintiff was a suspected child abuser was against the manifest weight of the evidence based upon the preponderance of the evidence contained in the record.

Accordingly, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

INGLIS and THOMAS, JJ., concur.