JOYCE M. BENITEZ, APPELLANT, V. JESSIE K. RASMUSSEN, IN HER OFFICIAL CAPACITY AS DIRECTOR OF THE STATE OF NEBRASKA, DEPARTMENT OF HEALTH AND HUMAN SERVICES, REGULATION AND LICENSURE, ET AL., APPELLEES.

626 N.W. 2d 209

Filed May 18, 2001.　No. S-00-079.

Brent M. Kuhn, of Harris, Feldman Law Offices, for appellant.

Don Stenberg, Attorney General, and Royce N. Harper for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

The appellant, Joyce M. Benitez, a child-care provider, was convicted of negligent child abuse. After conviction, the Department of Health and Human Services Regulation and Licensure (Department) placed her name in the Abused or Neglected Child Registry (Registry). Benitez then requested that her name be expunged from the Registry. The request was denied. The denial was upheld by the director of the Department in a hearing under Neb. Rev. Stat. § 28-723 (Reissue 1995). Benitez then filed a petition for review in the district court, which affirmed the Department's decision to deny expunction.

Benitez appeals, contending that the district court erred in various respects. We hold that the order denying expunction was supported by competent evidence and was not arbitrary or capricious and that Benitez was not denied due process or equal protection. Accordingly, we affirm.

## I. ASSIGNMENTS OF ERROR

Benitez assigns, restated, that the district court erred in affirming the Department's finding and order because (1) the order was arbitrary and capricious and not supported by competent evidence and (2) the agency failed to follow and/or properly establish its own rules and regulations and violated Benitez' rights to equal protection and due process.

## II. BACKGROUND

Before proceeding, it might be helpful to give some background information on the Registry. The Registry is a centralized database of child maltreatment reports that the Department maintains pursuant to Neb. Rev. Stat. § 28-718 (Reissue 1995). The reports identify the perpetrator as well as the child who was harmed. By statute, the Department is required to enter all reports of suspected abuse or neglect into the Registry. See Neb. Rev. Stat. §§ 28-713(1) and (4) and 28-715 (Reissue 1995). Once an investigation is completed, the Department must make a case status determination based on one of the following classifications: "(1) Court substantiated; (2) petition to be filed; (3) investigation inconclusive; or (4) unfounded report . . . ." Neb. Rev. Stat. § 28-720 (Reissue 1995).

A court-substantiated status determination is defined as a "finding of child maltreatment [that] has been validated by a court of competent jurisdiction." 390 Neb. Admin. Code, ch. 4, § 008.01 (1998). Once a status determination is made, the Department must give the person who is the subject of the report notice of its determination. See Neb. Rev. Stat. § 28-713.01 (Cum. Supp. 2000). Section 28-720 requires that the information identifying only persons in unfounded reports is to be expunged from the record.

A person may request that the Department "amend, expunge identifying information from, or remove the record of the report from the register." § 28-723. If the Department refuses to do so, the person is entitled to a fair hearing within the department. *Id.* The inquiry in such a hearing, however, is limited to determining whether the record is accurate and maintained in a manner consistent with Neb. Rev. Stat. §§ 28-710 (Cum. Supp. 2000) and 28-711 (Reissue 1995); §§ 28-713, 28-715, and 28-718; and Neb. Rev. Stat. §§ 28-719 to 28-727 (Reissue 1995 & Cum. Supp. 2000). See § 28-723. The burden of showing the report's accuracy and consistency with these statutes is on the Department. *Id.* With this background, we turn to the facts.

On November 8, 1995, a child was injured while in the childcare home of Benitez. Benitez was charged with felony child abuse, and on April 19, 1996, a jury found her guilty of negligent child abuse, a misdemeanor. She was placed on probation

for 2 years and ordered not to provide or engage in child care in any form during her probation. The Department subsequently placed her name in the Registry. The investigative status finding was court-substantiated abuse.

On June 24, 1998, Benitez requested that her name be expunged from the Registry. That request was denied by Suzanne Schied, a child welfare program specialist with the Department. Benitez then requested a hearing with the Department. At the hearing, Schied was the sole witness. She testified that under § 28-721, the Department applies a different criteria for determining if good cause for expunction exists in cases classified as inconclusive and cases classified as court substantiated.

For cases classified as inconclusive, she stated that the criteria for determining if there was good cause for expunction included: "the seriousness of the incident, the length of time since the incident had occurred, whether or not the person accepted responsibility, whether there's been any type of action taken to correct the problem, the recommendation of the worker that was involved and their supervisor, possibly." She stated that she did not apply this criteria to Benitez' case because she based her decision to deny Benitez' expunction request solely on the fact that Benitez' conviction of negligent child abuse supported the entry on the Registry of court-substantiated abuse.

Schied stated that good cause for expunction criteria was rarely applied to court-substantiated cases and that a period of approximately 5 years would have to pass before she would consider the criteria in a court-substantiated case. She also stated that she did not investigate the accuracy of any of the information entered into the Registry and that she did not find any extenuating circumstances in Benitez' case which would constitute good cause for expunction.

After the hearing, the director of the Department affirmed the denial of expunction, finding that the Registry report was accurate and that there were no mitigating circumstances or good cause to remove Benitez' name. Benitez sought judicial review in the district court. The district court found that Benitez had been allowed an opportunity to present mitigating circumstances at the hearing and affirmed the Department's decision denying expunction.

### III. STANDARD OF REVIEW

A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Gottsch Feeding Corp. v. State, ante* p. 19, 621 N.W.2d 109 (2001). When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* An appellate court, in reviewing a district court judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings. *Id.*

However, to the extent that dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion regardless of the decision of the court below. *Shearer v. Leuenberger*, 256 Neb. 566, 591 N.W.2d 762 (1999).

Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *In re Estate of Dickie, ante* p. 533, 623 N.W.2d 666 (2001); *Glantz v. Hopkins, ante* p. 495, 624 N.W.2d 9 (2001).

Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court. *Gottsch Feeding Corp. v. State, supra.*

### IV. ANALYSIS

Benitez contends that the Department's order was not supported by competent evidence and violated her rights to equal protection and due process because the order was arbitrary and capricious and that the Department failed to follow and/or properly establish its own rules and regulations.

#### 1. ACCURACY OF REPORT

Benitez does not contest her placement in the Registry or the court-substantiated status determination. Nonetheless, she

argues that the Department's denial of her request for expunction was not supported by competent evidence. This was, Benitez argues, because Schied testified at the hearing that she did not personally investigate the circumstances concerning the incident of abuse and that she relied solely upon Benitez' conviction of negligent child abuse to deny expunction of the Registry report.

The Legislature has not specified what the legal standard is for the Department's burden of proof in a hearing to expunge, amend, or remove a report under § 28-723. Other jurisdictions have concluded that state agencies must show that a report is substantiated by a preponderance of the evidence. See, e.g., *Lee TT. v. Dowling*, 87 N.Y.2d 699, 664 N.E.2d 1243, 642 N.Y.S.2d 181 (1996); *Cavarretta v. DCFS*, 277 Ill. App. 3d 16, 660 N.E.2d 250, 214 Ill. Dec. 59 (1996).

■ Moreover, § 28-723 specifies that "[a] juvenile court finding of child abuse or child neglect shall be presumptive evidence that the report was not unfounded." The State's burden of proof in a juvenile hearing to establish child abuse or child neglect is a preponderance of the evidence. See Neb. Rev. Stat. § 43-279.01(3) (Reissue 1998). We conclude that the Department must prove the accuracy and consistency of a Registry report of child abuse or neglect by a preponderance of the evidence in a hearing to expunge, amend, or remove a report under § 28-723.

■ Benitez was convicted of negligent child abuse by a jury. In a criminal case, due process requires the prosecution to prove, beyond a reasonable doubt, every factual element necessary to constitute the crime charged. See, e.g., *State v. Parks*, 253 Neb. 939, 573 N.W.2d 453 (1998). If a juvenile court's finding, by a preponderance of the evidence, that child maltreatment has occurred is presumptive evidence that a report is not unfounded, then certainly a criminal conviction of maltreatment is conclusive evidence that a Registry report is substantiated. See, e.g., *State ex rel. NSBA v. Brown*, 251 Neb. 815, 560 N.W.2d 123 (1997). The Department has met its burden of demonstrating that a Registry report of substantiated child abuse or neglect is accurate when there is evidence of a conviction stemming from the same actions which are the subject of the report.

## 2. Good Cause Shown

Section 28-721 permits the Department to amend, expunge, or remove from the Registry any record upon good cause shown. Benitez argues that the Department's discretion under § 28-721 was exercised in a manner that was arbitrary and capricious and that it violated her substantive and procedural due process rights and equal protection rights under both the federal and the state Constitutions.

### (a) Arbitrary and Capricious

Benitez contends that the Department's denial of her request for expunction was arbitrary and capricious because it was based upon subjective and vacillating standards and a lack of information. At the hearing, Schied stated that the good cause criteria was applied to very few court-substantiated cases. She added that a period of approximately 5 years would have to pass before she would consider the criteria in such a case.

A decision is arbitrary when it fails to consider the facts or circumstances and when there is no basis for a reasonable person to reach the same conclusion. *Phelps Cty. Bd. of Equal. v. Graf*, 258 Neb. 810, 606 N.W.2d 736 (2000); *Pittman v. Sarpy Cty. Bd. of Equal.*, 258 Neb. 390, 603 N.W.2d 447 (1999).

There is no merit to Benitez' contention that the Department failed to consider mitigating facts such as the early completion of her probation or the modification of her probation to allow her to provide nanny services to one family in Nebraska. Unless there is affirmative evidence to the contrary, a reviewing court will presume that an agency has duly considered all the evidence before it. *White v. State*, 248 Neb. 977, 540 N.W.2d 354 (1995), citing *Central Platte NRD v. State of Wyoming*, 245 Neb. 439, 513 N.W.2d 847 (1994). The district court correctly determined that the Department considered all the evidence presented at the hearing.

Concerning the denial as being arbitrary and capricious, the Department has broad discretion to grant or deny a request for expunction: "At any time, the department *may* amend, expunge, or remove from the central register any record upon good cause shown and upon notice to the subjects of the report and the division." § 28-721. See, also, *In re Interest of Amber G.*

*et al.*, 250 Neb. 973, 554 N.W.2d 142 (1996) (concluding that legislative use of "may" in Neb. Rev. Stat. § 43-247 (Reissue 1998) authorizes juvenile court to exercise broad discretion in its disposition of children).

When a person who is the subject of a Registry report has been convicted of intentional or negligent child abuse, the Department has valid justification for refusing to expunge a record except in rare instances. Neb. Rev. Stat. § 71-1911(9) (Cum. Supp. 2000) directs that the Department shall deny or revoke a child-care license "if an applicant or licensee has been found guilty of a crime involving the neglect, physical abuse, or sexual abuse of a child or an adult." Because Benitez had operated a child-care business at the time of this incident, the Department had particular incentive to ensure that its actions were in compliance with § 71-1911(9). The district court was correct in its determination that the Department's order of denial was not arbitrary or capricious.

### (b) Due Process Claims

Although Benitez contends that the Department's decision violated her substantive and procedural due process rights, she does not assert any substantive due process claims. Rather, her arguments are centered around her procedural due process.

Procedural due process limits the ability of the government to deprive people of interests which constitute "liberty" or "property" interests within the meaning of the Due Process Clause and requires that parties deprived of such interests be provided adequate notice and an opportunity to be heard. *In re Interest of Natasha H. & Sierra H.*, 258 Neb. 131, 602 N.W.2d 439 (1999).

Benitez does not state the protected interest of which she was deprived in her petition for review with the district court. In her brief, however, she states that "the criteria utilized by Ms. Schied in conclusive versus inconclusive cases and the arbitrary period of five (5) years when evaluating the cases for expungement involve private rights of privacy, and it affects the property interest in having a licensed daycare business." Brief for appellant at 12. We construe her argument to be that the Department deprived her of a liberty interest in privacy and a property

interest in her child-care business by failing to consider a complete record, failing to follow its own regulations by adopting de facto rules and regulations, and failing to consider extenuating or mitigating circumstances for good cause shown.

### (i) Protected Liberty Interest

█ When an individual claims he or she is being deprived of a liberty interest without due process, the claim is examined in three stages. First, a determination must be made that there is a liberty interest at stake. In the second stage, the court must determine what procedural safeguards are required. Finally, the facts of the case are examined to ascertain whether there was a denial of that process which was due. *State v. Baker*, 245 Neb. 153, 511 N.W.2d 757 (1994).

█ In *Paul v. Davis*, 424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976), the Supreme Court set out what has come to be known as the "stigma plus" test. See *Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994). In *Paul*, the Court held that an injury to reputation alone is not enough to create a liberty interest "apart from some more tangible interests such as employment." 424 U.S. at 701.

Other jurisdictions have found that the inclusion of a person's name in state child abuse registries results in an injury to reputation rising to the level of stigma even when the dissemination of that information is limited. See *Matter of East Park High School*, 314 N.J. Super. 149, 714 A.2d 339 (1998) (concluding that injury to teacher's good reputation resulted in stigma when private child-care agencies could obtain licensure only through clearance with central registry even though agencies did not have access to reports). See, *Watso v. Dept. of Social Services*, 841 P.2d 299 (Colo. 1992); *Cavarretta v. DCFS*, 277 Ill. App. 3d 16, 660 N.E.2d 250, 214 Ill. Dec. 59 (1996); *Doyle v. Camelot Care Centers, Inc.*, No. 00 C 2450, 2001 WL 315206 (N.D. Ill. Mar. 30, 2001).

When that stigma is coupled with the claimant's allegation that his or her inclusion in a central registry has placed a "tangible burden on . . . employment prospects," see *Valmonte v. Bane*, 18 F.3d at 1001, courts have found that the claimant has stated a cognizable legal claim for a procedural due process violation.

Likewise, when familial relations are eroded by an individual's inclusion in the registry, courts have found the "plus" requirement satisfied. See, e.g., *Bohn v. County of Dakota*, 772 F.2d 1433 (8th Cir. 1985); *Watso v. Dept. of Social Services, supra.*

Unlike those cases, however, no familial rights have been implicated in this case. Furthermore, Benitez does not contend that she has been denied employment opportunities because of the inclusion of her name in the registry. Rather, the tangible interest that Benitez contends she has lost as a result of being placed on the registry is her property interest in having a licensed child-care business. This requires an analysis to determine whether she has asserted a valid protected property interest.

### (ii) Protected Property Interest

■ In order to have a protected property interest, one must have a legitimate claim of entitlement. *Prime Realty Dev. v. City of Omaha*, 258 Neb. 72, 602 N.W.2d 13 (1999), citing *Board of Regents v. Roth*, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972).

■ Property interests for purposes of procedural due process are created, and their dimensions are defined, by existing rules or understandings that stem from an independent source such as state law. *Id.*

■ Benitez, who has been convicted of negligent child abuse, does not have a legitimate claim of entitlement to a licensed child-care business. The Department is responsible for regulating the licensing of child-care facilities. See Neb. Rev. Stat. § 71-1912 (Cum. Supp. 2000) ("the department shall adopt and promulgate rules and regulations establishing standards for the physical well-being, safety, and protection of children pursuant to the licensing of providers"). The Legislature has specifically made the renewal of licenses subject to the Department's rules and regulations. See § 71-1911(8). Under those regulations, the Department's staff is required to check the background of any applicant against the Registry and may deny or revoke a license for any applicant listed in the Registry as a perpetrator. See 391 Neb. Admin. Code, ch. 3, § 001.04 (1998).

More crucial to Benitez' claim of entitlement, however, is the fact that she would have been denied a renewal of her license

even if her name had not been included in the registry. As noted, the Department is required by statute to deny or revoke a license "if an applicant or licensee has been found guilty of a crime involving the neglect, physical abuse, or sexual abuse of a child or an adult." See § 71-1911(9). Therefore, the primary reason for denying her licensure was her conviction, not the Registry report.

We hold that under Nebraska law, Benitez does not have a legitimate claim of entitlement to a licensed child-care business and has failed to state a valid protected property interest for purposes of procedural due process. Because this is the only tangible interest she has asserted that would satisfy the stigma plus test set out in *Paul v. Davis*, 424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976), she does not have a protected liberty interest as well. We conclude that her due process claim must fail.

(c) Equal Protection

Benitez argues that the decision violated her equal protection rights because the Department's good cause criteria was applied to inconclusive reports but rarely to cases involving court-substantiated reports, and never before a period of approximately 5 years had passed.

The initial inquiry in an equal protection analysis focuses on whether the challenger is similarly situated to another group for purposes of the challenged governmental action. *State v. Atkins*, 250 Neb. 315, 549 N.W.2d 159 (1996). Absent this threshold showing, one lacks a viable equal protection claim. *Gramercy Hill Enters. v. State*, 255 Neb. 717, 587 N.W.2d 378 (1998).

The challenged governmental action in this case is the department's unequal consideration of extenuating circumstances constituting good cause. The relevant inquiry is whether persons who are the subjects of court-substantiated reports are similarly situated to those who are the subjects of reports not substantiated by a court finding.

Both the subjects of court-substantiated reports and the subjects of inconclusive reports have been accused of child maltreatment. Every report of suspected abuse or neglect is filed in the Registry if there is some credible evidence of maltreatment, even if an investigation later casts some doubt on the accuracy

of the report. Only unfounded reports are expunged. Obviously, however, there are real differences between the classifications of inconclusive and court-substantiated reports.

In a court-substantiated report, the evidence is strong enough to convict the accused of abuse or neglect beyond a reasonable doubt or to allow a juvenile court to find by a preponderance of the evidence that the maltreatment had occurred. In contrast, inconclusive reports are only based upon some credible evidence, meaning they are more likely to be inaccurate. See, e.g., *Cavarretta v. DCFS*, 277 Ill. App. 3d 16, 660 N.E.2d 250, 214 Ill. Dec. 59 (1996). Therefore, when no further incidents have occurred after a period of time, applying the good cause criteria to inconclusive reports could indicate that there is valid reason to expunge, amend, or remove the record from the Registry.

Thus, persons who are the subjects of inconclusive reports differ from persons who are the subjects of court-substantiated reports. For this reason, we conclude that the application of good cause criteria on an unequal basis to persons who are the subjects of inconclusive reports does not violate Benitez' equal protection rights.

## V. CONCLUSION

We conclude the district court correctly affirmed the Department's order refusing to remove Benitez' name from the Registry.

AFFIRMED.