RICHARD A. YOUNG, JR., APPELLANT, V. BEVERLY NETH,
DIRECTOR OF THE DEPARTMENT OF MOTOR VEHICLES
OF THE STATE OF NEBRASKA, APPELLEE.
637 N.W.2d 884

Filed January 18, 2002.   No. S-00-550.

Louie M. Ligouri, of Ligouri Law Office, for appellant.

Don Stenberg, Attorney General, and Jodi M. Fenner for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.
### NATURE OF CASE
Richard A. Young, Jr., appeals from the order of the district court for Richardson County which affirmed the order of Beverly Neth, director of the Nebraska Department of Motor Vehicles (the Department), which order administratively revoked Young's motor vehicle operator's license. Because we conclude as a

matter of law that the tribal officer lacked authority to arrest Young outside the reservation for conduct outside the reservation, the revocation based on such arrest was improper and the decision of the district court affirming the revocation does not conform to the law. Accordingly, we reverse the order of the district court and remand the cause with directions to the district court to reverse the order of the Department which had revoked Young's motor vehicle operator's license.

## STATEMENT OF FACTS

The relevant facts are not in dispute. On October 21, 1999, Iowa tribal officer Jeremy M. Goldsberry observed a vehicle stopped on Happy Hollow Road on the Iowa Indian Reservation, which is located, in part, within Richardson County, Nebraska. Goldsberry was employed as a tribal officer with the Iowa Tribal Police Department. Goldsberry was not employed as a police officer by the State of Nebraska or Richardson County. In addition to the vehicle, Goldsberry observed several mailboxes lying in the grass and broken mailbox posts proximate to the vehicle. Goldsberry pulled his cruiser behind the stopped vehicle. As Goldsberry activated his lights, the vehicle sped off.

Goldsberry pursued the vehicle for approximately 8 or 9 miles. During the pursuit, Goldsberry witnessed the driving outside the reservation, which fact gives rise to this case. During the pursuit, Goldsberry observed the vehicle proceed in an erratic pattern, swerve from lane to lane, increase and decrease speed, run stop signs, and narrowly avoid striking a police car. Goldsberry was joined in his pursuit of the vehicle by Sam D'Amico, another tribal officer.

Eventually Goldsberry, D'Amico, and a deputy sheriff from Richardson County stopped the vehicle outside the reservation in Richardson County. After the vehicle was stopped, Goldsberry removed the driver from the car. Goldsberry later identified the driver as Young. According to the record on appeal, Young is not a member of an Indian tribe. Goldsberry noted that Young smelled of alcohol and had difficulty standing. Goldsberry administered two field sobriety tests to Young, which Young failed. The Richardson County deputy sheriff also administered several field sobriety tests to Young. Young failed those tests as

well. Goldsberry asked Young to take a preliminary breath test. Young refused.

Goldsberry testified that he placed Young under "arrest" while Young was in Richardson County but was not on the reservation. From the record provided on appeal, we understand that Young was "arrested" for drunk driving, a Class W misdemeanor, and for reckless driving, which is also a misdemeanor under state law. See Neb. Rev. Stat. §§ 60-6,197, 60-6,216, and 60-6,218 (Reissue 1998 & Supp. 1999). Goldsberry thereafter transported Young to a local hospital in Richardson County. At the hospital, Goldsberry read the postarrest chemical test advisement form to Young and requested that Young submit to a blood test. Young twice refused to submit to the test. Goldsberry prepared a "Notice/Sworn Report/Temporary License" form as described in Neb. Rev. Stat. § 60-6,205(2) (Reissue 1998) (the sworn report) and gave a copy of the sworn report to Young. Young does not contest that he received a copy of the sworn report from Goldsberry.

Following the foregoing events, the parties proceeded through the administrative revocation process described in the statutes and the Nebraska Administrative Code pertaining to the rules of the road. See, § 60-6,205; Neb. Rev. Stat. §§ 84-901 to 84-920 (Reissue 1999); 247 Neb. Admin. Code, ch. 1, §§ 001 to 027 (1998). Young contested the revocation and requested a formal rules of evidence hearing pursuant to § 84-914(1), which request was granted.

On January 31, 2000, a hearing was held regarding the administrative revocation of Young's driver's license. Young and Goldsberry testified at the January 31 hearing. Twelve exhibits were received into evidence, including three slightly different versions of the same sworn report prepared, amended, and signed by Goldsberry. These versions of the sworn report are identified as exhibits 2-2, 6-1, and 9-1. Each of the versions was signed by Goldsberry as the "arresting officer," and on each version, Goldsberry listed the "Iowa Tribal Police Dept." as his employing law enforcement agency. None of the versions of the sworn report are signed by a law enforcement official from the State of Nebraska or Richardson County. At the conclusion of the hearing, the hearing officer took the matter under advisement.

On February 4, 2000, the hearing officer issued proposed findings of fact, proposed conclusions of law, and a recommended order of revocation, all of which were adopted as the official and final order by the Department on February 7. As a result of the Department's order, Young's driver's license was revoked for a period of 1 year.

On February 17, 2000, Young appealed the Department's order by filing his petition for review in the district court for Richardson County. Young's petition came on for hearing before the district court on April 25. The district court received the bill of exceptions from the January 31 hearing into evidence. On May 1, the district court entered an order which affirmed the Department's order which had revoked Young's driver's license for 1 year.

Young appeals the district court's order. Additional facts will be set forth below where pertinent to our analysis of Young's assignments of error.

## ASSIGNMENTS OF ERROR

On appeal, Young makes five assignments of error, all claiming generally that the district court erred in affirming the Department's order of revocation. Young specifically challenges the authority of tribal officer Goldsberry to arrest him outside the reservation.

## STANDARDS OF REVIEW

A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Marshall v. Wimes*, 261 Neb. 846, 626 N.W.2d 229 (2001); *Benitez v. Rasmussen*, 261 Neb. 806, 626 N.W.2d 209 (2001). When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court. *Benitez v. Rasmussen, supra.*

## ANALYSIS

In the instant appeal, we must decide whether the district court's decision affirming the Department's revocation conforms to the law. See *Benitez v. Rasmussen, supra.* As explained *infra,* we conclude that tribal officer Goldsberry was not authorized to arrest Young for the driving offense which occurred in Richardson County, Nebraska, but was outside the Iowa Indian Reservation. As a consequence of Goldsberry's lack of authority to arrest Young, the subsequent driver's license revocation based on such arrest was not proper as a matter of law. Accordingly, we conclude that the district court's affirmance of the revocation did not conform to the law.

Section 60-6,205(2) provides, in pertinent part, as follows:

If a person *arrested* pursuant to section 60-6,197 [driving under the influence of alcoholic liquor or drugs] refuses to submit to the chemical test of blood, breath, or urine required by that section . . . [t]he *arresting peace officer* shall within ten days forward to the director a sworn report stating (a) that the person was *validly arrested* pursuant to section 60-6,197 and the reasons for such arrest, (b) that the person was requested to submit to the required test, and (c) that the person refused to submit to the required test.

(Emphasis supplied.)

Pursuant to § 60-205(5)(b), once the Department receives the sworn report described in § 60-6,205(2), the Department serves notice to the driver of the administrative license revocation process. It is clear from § 60-6,205(2) that the sworn report which triggers the administrative license revocation process must be prepared by an "arresting peace officer" who has "validly arrested" a driver. Thus, the revocation itself must be based on a valid arrest.

Goldsberry testified that he "arrested" Young, completed the sworn report, and signed the sworn report as the "arresting officer." It is undisputed that Young, a non-Indian, had been driving approximately 8 miles outside the reservation in Richardson County at the time tribal officer Goldsberry effected the "arrest."

In order to determine if his "arrest" of Young was valid, we must determine as a matter of law whether Goldsberry was acting within the limits of his authority as a tribal officer. The U.S.

Supreme Court has noted that "[i]t must always be remembered that the various Indian tribes were once independent and sovereign nations . . . ." *McClanahan v. Arizona State Tax Comm'n*, 411 U.S. 164, 172, 93 S. Ct. 1257, 36 L. Ed. 2d 219 (1973). In this regard:

> Indian tribes possess an inherent sovereignty except where it has been specifically taken away from them by treaty or act of Congress. United States v. Mazurie, 419 U.S. 544, 95 S.Ct. 710, 717-718, 42 L.Ed.2d 706 (1975); Iron Crow v. Oglala Sioux Tribe of Pine Ridge Reservation, South Dakota, 231 F.2d 89 (8th Cir. 1956). Intrinsic in this sovereignty is the power of a tribe to create and administer a criminal justice system. "An Indian tribe may exercise a complete [criminal] jurisdiction *over its members and within the limits of the reservation* subordinate only to the expressed limitations of federal law." F. Cohen, Handbook of Federal Indian Law 148 (1942 ed. as republished by the University of New Mexico Press).

(Emphasis supplied.) *Ortiz-Barraza v. United States*, 512 F.2d 1176, 1179 (9th Cir. 1975). Subsequent to the decision in *Ortiz-Barraza* quoted above, Congress passed "legislation declaring that tribes possess inherent criminal jurisdiction over all Indians. Pub. L. No. 102-137, § 1, 105 Stat. 646 (1991)." *State v. Schmuck*, 121 Wash. 2d 373, 387 n.6, 850 P.2d 1332, 1339 n.6 (1993).

It has been observed that "Indian tribal police forces have long been an integral part of certain tribal criminal justice systems and have often performed their law enforcement duties *to the limits of available jurisdiction.*" (Emphasis supplied.) *Ortiz-Barraza v. United States*, 512 F.2d at 1179. Although a tribe has authority over member and nonmember Indians involving criminal matters, such is not the case as to non-Indians. See, *Duro v. Reina*, 495 U.S. 676, 110 S. Ct. 2053, 109 L. Ed. 2d 693 (1990) (Indian tribes may not assert criminal jurisdiction over nonmember Indians for misdemeanor crimes; superseded by 25 U.S.C. 1301(2) (1994)); *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 212, 98 S. Ct. 1011, 55 L. Ed. 2d 209 (1978) ("Indian tribes do not have inherent jurisdiction to try and punish non-Indians").

"[T]wice the [U.S.] Supreme Court has stated that a tribe's proper response to a crime committed by a non-Indian on the

reservation is for the tribal police to detain the offender and deliver him or her to the proper authorities." *State v. Schmuck*, 121 Wash. 2d at 387, 850 P.2d at 1339. An individual who commits a crime on the reservation may not violate the law with impunity because

> [t]he tribes . . . possess their traditional and undisputed power to exclude persons whom they deem to be undesirable from tribal lands. . . . Tribal law enforcement authorities have the power to restrain those who disturb public order on the reservation, and if necessary, to eject them. Where jurisdiction to try and punish an offender rests outside the tribe, tribal officers may exercise their power to detain the offender and transport him to the proper authorities.

*Duro v. Reina*, 495 U.S. at 696-97.

■ It is clear that the authority of tribal officers in criminal matters is limited by certain factors, including the boundaries of the reservation and whether the offender is a non-Indian. Because it is settled law that the Indian tribes may not assert criminal jurisdiction over a non-Indian for a misdemeanor crime committed on the reservation, a fortiori, the Indian tribes may not do so outside the reservation. We therefore conclude that given the facts that Young was a non-Indian purportedly arrested for driving under the influence on a roadway outside the reservation and Goldsberry was a tribal officer outside the territorial boundaries of his jurisdiction when he "arrested" Young for misdemeanor drunk driving, Goldsberry did not have the authority to make such arrest. See *State v. Cuny*, 257 Neb. 168, 595 N.W.2d 899 (1999) (holding that tribal officers from Pine Ridge Indian Reservation located in South Dakota had no common law or statutory authority in Nebraska to arrest misdemeanant drunk driver in Nebraska). In the instant case, Young was not "validly arrested," see § 60-6,205(2), and the subsequent revocation ordered by the Department based on such arrest was not proper. The district court erred in affirming the order of revocation.

## CONCLUSION

As a matter of law, Young was not validly arrested by tribal officer Goldsberry. The Department's license revocation based

on such arrest was not proper. The district court's order affirming the Department's revocation order did not conform to the law. The order of the district court is reversed, and the cause is remanded to the district court with directions to reverse the Department's order which revoked Young's license.

REVERSED AND REMANDED WITH DIRECTIONS.

MCCORMACK, J., participating on briefs.