CHARLES KORUNKA, Plaintiff-Appellant, v. THE DEPARTMENT OF CHILDREN AND FAMILY SERVICES *et al.*, Defendants-Appellees.

Fourth District    No. 4—93—0554

Argued January 19, 1994.—Opinion filed March 10, 1994.

Charles J. Kolker (argued), of Belleville, for appellant.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Susan Frederick Rhodes, Assistant Attorney General (argued), of counsel), for appellees.

JUSTICE KNECHT delivered the opinion of the court:

On October 13, 1992, the Department of Children and Family Services (DCFS) denied Charles Korunka's request to expunge an indicated report of child abuse. Korunka then filed an administrative review action in the circuit court. The circuit court affirmed the DCFS decision. Korunka appeals. We reverse.

DCFS filed an indicated report of child abuse pursuant to the Abused and Neglected Child Reporting Act (Act) (Ill. Rev. Stat. 1991, ch. 23, par. 2051 *et seq.*), finding Korunka had inflicted a cut, bruise, or welt on his student on April 12, 1991, and Korunka had placed his student in substantial risk of physical injury. Korunka filed a request with DCFS to expunge the indicated report as unfounded. DCFS

notified Korunka a review had been made and his request to expunge the record was denied. Korunka then requested a hearing pursuant to section 7.16 of the Act (Ill. Rev. Stat. 1991, ch. 23, par. 2057.16). After a hearing, the administrative law judge (ALJ) found there was sufficient evidence Korunka had inflicted a cut, bruise, or welt for an indicated report of child abuse. The ALJ recommended the indication of substantial risk of injury be removed because it is inconsistent to indicate a person for both substantial risk and specific abuse based on one set of facts.

The DCFS Director concurred with the ALJ's findings and Korunka's request to expunge the indicated report was denied. The Director did, however, remove the finding of substantial risk of physical injury from the indicated report. Korunka filed a complaint in the circuit court to review DCFS denial of his request to expunge the indicated report pursuant to section 11.6 of the Act (Ill. Rev. Stat. 1991, ch. 23, par. 2061.6). After reviewing the administrative hearing transcript and considering arguments from counsel, the circuit court affirmed the denial of the request to expunge the indicated report. Korunka then filed his appeal to this court.

An administrative hearing was held during which Korunka, Mike Ross, Loren Ross, Rory Rathgeb, and Margaret Young testified. Korunka testified he had been a teacher for 26 years. On April 12, 1991, he was a teacher at Benld junior high school. Mike Ross was in his fourth-hour science class that day. Korunka testified Mike had become increasingly aggressive during the year, and on the day in question he was exhibiting unusually bad behavior. Mike had been given essays to write for talking during class, but he continued to be disruptive so he was given detention. Then, when Korunka was attempting to discipline another student, Mike began arguing with Korunka. Korunka testified Mike became increasingly agitated and began talking nonsense. Korunka saw Mike was about to get out of his seat and made the determination he should use force to keep Mike in his seat, for Mike's own safety and for the safety of the other students. To keep Mike in his seat, Korunka placed his hands on Mike's shoulders.

Mike Ross was called to testify by Korunka. He testified on April 12, 1991, he was a student in Korunka's junior high science class. Mike denied having had many disciplinary problems, but did admit being held after school, although he could not remember why, and to cheating on one occasion. After Korunka's counsel began to question Mike about the incident, Mike stood up, shouted this hearing was "fucking bullshit" and left the room. The ALJ followed Mike and his father to the parking lot and convinced Mike to return to complete

his testimony. The ALJ stated for the record he had talked with Mike and his father, Mike's father had expressed concern about the inquiries into Mike's prior bad acts, and he had assured Mike if Mike returned to testify he would limit the inquiry into Mike's past. Mike then continued to testify about the incident, the nature of his injury, and how the bruises were caused. Mike testified he was not trying to get out of his seat; Korunka put one hand on his shoulder and the other under his chin, squeezed and said something to the effect of "as soon as you understand who's in charge here we'll get along fine."

Loren Ross, Mike's father, testified he was called to come to school on April 12, 1991, because of the incident between Korunka and Mike. Mr. Ross testified Mike did not have any marks or bruises before he went to school that day. He testified while at school, he was told about the incident by Mike and Korunka read a statement he had written about the incident. Korunka also demonstrated how he had put one hand on Mike's shoulder and the other under Mike's chin. Mr. Ross testified he saw the marks on Mike and they were starting to bruise; he stated the bruises did begin to fade after 48 hours. Mr. Ross took Mike to the hospital, where Mike was released after an examination without receiving any special treatment. Mr. Ross conceded Mike was a problem student and there had been other incidents with other teachers.

Rory Rathgeb, chief of Benld police, testified he was present at the school immediately after the incident. He stated Mike appeared shaken and upset, and there were red marks on Mike's neck and shoulders where Korunka had grabbed him. He further testified Korunka had stated he had been angry at the time and may have acted inappropriately.

Margaret Young, an investigator for DCFS, submitted an investigative report in which she interviewed Mike and Korunka as well as other collateral sources, although she did not interview any other students present in class the day of the incident. She admitted she was aware Mike was a problem student. She stated, however, it was her belief Korunka had exceeded the proper limits of discipline and had acted contrary to school policy regarding physical discipline. She further testified the location of Korunka's hands in the neck and shoulder area combined with enough pressure to cause marks or bruising was what in her opinion amounted to the indicated abuse.

First, it should be noted it was inappropriate for the ALJ to follow Mike and Loren Ross to the parking lot and to convince Mike to return to testify. It was also improper to promise Mike Ross that inquiry into his past behavior would be limited. *Ex parte* communications are generally prohibited (see 48A C.J.S. *Judges* § 36 (1981)), *e.g.*,

by Supreme Court Rule 63 (134 Ill. 2d R. 63). In addition, administrative hearings, like trials, are to be held in a fair and impartial manner. (*Withrow v. Larkin* (1975), 421 U.S. 35, 46, 43 L. Ed. 2d 712, 723, 95 S. Ct. 1456, 1464; *In re Murchison* (1955), 349 U.S. 133, 136, 99 L. Ed. 942, 946, 75 S. Ct. 623, 625; *Waste Management of Illinois, Inc. v. Pollution Control Board* (1988), 175 Ill. App. 3d 1023, 1036, 530 N.E.2d 682, 693.) While the *ex parte* communication here may not require reversal since some Illinois cases have held there must be a showing of actual prejudice to the complainant (*Waste Management*, 175 Ill. App. 3d at 1043, 530 N.E.2d at 697; *Town of Ottawa v. Pollution Control Board* (1984), 129 Ill. App. 3d 121, 126, 472 N.E.2d 150, 154), the ALJ should avoid any *ex parte* communication with a testifying witness in order to avoid even the appearance of impropriety.

■ Irrespective of the *ex parte* communication, we find the agency's denial to expunge the indicated report must be reversed because the finding of abuse is against the manifest weight of the evidence. DCFS is vested with the authority to investigate and to make findings of child abuse, including findings against educators. (Ill. Rev. Stat. 1991, ch. 23, par. 2051 *et seq.*) Once a finding has been made an educator is the subject of an indicated report of child abuse, the educator may apply to DCFS for amendment or expungement of the record (Ill. Rev. Stat. 1991, ch. 23, par. 2057.16); any decision by DCFS is reviewable under the Administrative Review Law (Ill. Rev. Stat. 1991, ch. 23, par. 2061.6). The standard to be applied on review is whether the decision of the agency is against the manifest weight of the evidence. *East St. Louis School District No. 189 v. Hayes* (1992), 237 Ill. App. 3d 638, 646, 604 N.E.2d 557, 563; *In re A.T.* (1990), 197 Ill. App. 3d 821, 829-30, 555 N.E.2d 402, 408.

■ The Act provides, in part, "abuse" occurs if one inflicts a physical injury "which causes death, disfigurement, impairment of physical or emotional health, or loss or impairment of any bodily function," creates a substantial risk of physical injury "which would be likely to cause death, disfigurement, impairment of physical or emotional health, or loss or impairment of any bodily function," or inflicts "excessive corporal punishment" upon a child. (Ill. Rev. Stat. 1991, ch. 23, pars. 2053(a), (b), (e).) The regulations promulgated by DCFS list the specific incidents of harm which must be alleged to have been caused by the abuser in order to accept a report of abuse. (89 Ill. Adm. Code § 300 app. B (1991).) Although bruises are listed as one type of harm, the regulations specifically provide "[n]ot every cut, bruise, or welt constitutes an allegation of harm." 89 Ill. Adm. Code § 300 app. B (1991).

The ALJ found Korunka grabbed Mike by the shoulder and by the throat and left marks; this, he concluded, amounted to abuse. The ALJ stated in making this finding, great weight was given to the testimony of Mike's father regarding Korunka's demonstration of the hold he had used on Mike, Mike's testimony at trial regarding the hold Korunka had used on him, Korunka's acknowledgment of a mark on Mike's throat (even though he denied ever touching Mike's throat), and Korunka's remark to Officer Rathgeb that he might have acted inappropriately because he was upset at the time. Consequently, Korunka's request to expunge the indicated report was denied.

■ We hold the finding of abuse is against the manifest weight of the evidence. First, as the DCFS regulations state, not every bruise results in a finding of harm. Although the ALJ did find Korunka grabbed Mike and left a "mark," such action does not necessarily amount to abuse. Beyond the regulation which states not every bruise amounts to abuse, the Act requires for a finding of abuse "death, disfigurement, impairment of physical or emotional health, or loss or impairment of any bodily function," substantial risk of such injury, or corporal punishment which is "excessive." The actions by Korunka caused marks but did not cause death, disfigurement, any impairment of health, or any loss of bodily function. His actions did not constitute excessive corporal punishment. Korunka's actions do not amount to abuse under the statute. Second, DCFS seems to have placed a significant amount of weight on the fact Korunka admitted he may have acted inappropriately. While this may be true, inappropriate behavior does not necessarily amount to abuse. We need not determine whether Korunka could have handled the incident in another way. It is against the manifest weight of the evidence to find the level of contact which occurred in this case amounted to an indicated level of abuse under the statute. Therefore, we reverse the circuit court's judgment affirming the agency's denial of Korunka's request to expunge the indicated report of abuse.

Reversed.

COOK and STEIGMANN, JJ., concur.