No. 3--06--0027

_____

Filed November 2, 2006.
IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2006

| | | |
|---|---|---|
| DON LYONS, | ) | Appeal from the Circuit Court |
| | ) | of the Tenth Judicial Circuit |
| Plaintiff-Appellee, | ) | Peoria County, Illinois |
| | ) | |
| v. | ) | No. 05--MR--168 |
| | ) | |
| ILLINOIS DEPARTMENT OF | ) | |
| CHILDREN AND FAMILY SERVICES, | ) | Honorable |
| | ) | John Barra |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LYTTON delivered the Opinion of the court:
_____

Defendant, Illinois Department of Children and Family Services (DCFS), denied plaintiff Don Lyons' request to expunge an indicated report of child abuse. Plaintiff filed an action for administrative review in the circuit court. The circuit court reversed the DCFS decision. We affirm the circuit court.

BACKGROUND

In the fall of 2004, plaintiff was hired as a teacher's assistant at the Trewyn School Day Treatment Center for emotionally and behaviorally disturbed children. Plaintiff had previously worked as a teacher's assistant at other schools in Peoria for six years.

On the morning of October 27, 2004, K.C., a 10-year-old student, approached plaintiff in the cafeteria and spoke disrespectfully to him. When plaintiff told K.C. to

apologize, K.C. began cursing. Plaintiff looked around the cafeteria for behavioral attendants, who are primarily responsible for disciplining children at Trewyn. Seeing no behavioral attendants, plaintiff personally escorted K.C. out of the cafeteria and into the classroom portion of the school.

Plaintiff decided that K.C. needed a "time-out," so he led K.C. to a room commonly known as the "cubby." The cubby is a small room with two student desks and a teacher's desk. It is commonly used for time-outs. Next to the cubby is a designated time-out room, which has padded walls and no furniture.

In the cubby, plaintiff instructed K.C. to stand in the corner for his time-out. K.C. refused to do so and sat down at one of the student desks. Plaintiff told K.C. that he had to stand up and led him back to the corner. Again, K.C. walked to a student desk and sat down. Plaintiff attempted to physically place K.C. back in the corner, but K.C. began flailing his arms. Plaintiff thought that K.C. might injure himself, so he "took K.C. to the floor." After holding him there for a few seconds, plaintiff and K.C. stood up.

When plaintiff and K.C. were standing, Jane Kresl, K.C.'s former teacher, came to the cubby and asked if everything was alright. Plaintiff said everything was fine and asked for an incident report form. Kresl gave him a form and noticed what looked like a rug burn on K.C.'s head. Plaintiff told her that K.C. hit his head when he was restraining him. A few minutes later, K.C.'s current teacher, Sheila Steward, saw plaintiff and K.C. in the cubby and noticed a bump on K.C.'s forehead. Stewart took K.C. to the bathroom to wash his face and then took him to the principal's office.

The principal, Lucille Melchert-Shay, took pictures of the bump on K.C.'s head. She told plaintiff to call K.C.'s guardian, Valerie Edwards, and explain what happened. Plaintiff

2

spoke to Edwards in the afternoon when K.C. was on his way home from school. When K.C. arrived home, Edwards saw the bump on his head and took him to the emergency room. Emergency room personnel performed a head CT, which was normal. K.C. was given Motrin and told to take Ibuprofin or Tylenol as needed. The discharge instructions stated that K.C. could expect "headaches, some nausea, dizziness." The police were called and decided not to press charges against plaintiff.

DCFS investigated the incident. As a result of its investigation, DCFS concluded that plaintiff had abused K.C. and entered an indicated finding against him for placing a cut, bruise or welt on K.C. Plaintiff appealed the finding and requested that the record be expunged.

A hearing was held before an Administrative Law Judge (ALJ). At the hearing, K.C.'s current teacher testified that K.C. was very small and fragile for his age and was not physically abusive to others. However, K.C.'s teacher from the prior year described him as "very, very aggressive." He had been suspended for 45 days the prior year for kicking a teacher's assistant.

K.C. did not testify at the hearing, but the ALJ considered the statements he made about the incident to the DCFS investigator, principal and teachers. According to K.C.'s statements, he had done nothing wrong when plaintiff grabbed him by the collar and removed him from the cafeteria. A student standing next to K.C. in the cafeteria told the DCFS investigator that K.C. had cursed at plaintiff, causing plaintiff to remove him from the cafeteria. K.C. also gave several different accounts of what happened in the cubby. On one occasion, he stated that plaintiff pushed his head into the floor. In all of his other statements, he said that his head bumped the floor when plaintiff was restraining him.

3

At the hearing, plaintiff explained that he took K.C. to the cubby instead of the designated time-out room because he thought that some paperwork had to be completed in order to take a student to the time-out room. The principal of Trewyn testified that time-out reports are completed when a student is taken from class to the time-out room.

Following the hearing, the ALJ recommended that the Director of DCFS deny plaintiff's request to expunge the indicated report. Specifically, the ALJ concluded, in part, that (1) K.C. was not a danger to himself or others when plaintiff took him to the ground; (2) plaintiff's fear that K.C. might hurt himself by flailing his arms was caused by plaintiff not taking him to the designated time-out room; and (3) K.C. was credible with respect to how he received the injury to his forehead.[1] Although the ALJ specifically noted that plaintiff had a very good history of performing his job, he concluded that there was sufficient evidence to support an indicated finding against plaintiff.

The DCFS Director adopted the ALJ's findings of fact and conclusions of law and denied plaintiff's request for expungement. Plaintiff sought judicial review. The trial court reversed the Director's decision, finding that it was "against the manifest weight of the evidence and contrary to law."

ANALYSIS

A child is abused when a person responsible for the child's welfare:

---

[1] We are bewildered by the ALJ's credibility finding since K.C. was not present at the hearing for the ALJ to observe. See City of Chicago v. Old Colony Partners, L.P., 364 Ill. App. 3d 806, 847 N.E.2d 565 (2006) (credibility determinations are left to judges who are able to measure a witness in person and observe his demeanor).

4

"a. inflicts, causes to be inflicted or allows to be inflicted upon such child physical injury, by other than accidental means, which causes death, disfigurement, impairment of physical or emotional health, or loss or impairment of any bodily function;

b. creates a substantial risk of physical injury to such child by other than accidental means which would be likely to cause death, disfigurement, impairment of physical or emotional health, or loss or impairment of any bodily function; [or]

* * *

e. inflicts excessive corporal punishment."  325 ILCS 5/3(a),(b),(e) (West 2004).

The regulations promulgated by DCFS list the specific incidents of harm which must be alleged in a report of abuse.  89 Ill. Adm. Code § 300 app. B (2000).  Cuts, bruises and welts are listed as one type of harm.  89 Ill. Adm. Code § 300 app. B (2000). However, "[n]ot every cut, bruise, or welt constitutes an allegation of harm."  89 Ill. Adm. Code § 300 app. B (2000).  A number of factors should be considered when determining whether an injury which resulted in cuts, bruises or welts constitutes an allegation of harm:

"- the child's age (children aged 6 and under are at a much greater risk of harm).

- child's medical condition, behavioral, mental, or emotional problems, developmental disability, or physical handicap, particularly as they relate to the child's ability to seek help.

5

- pattern or chronicity of similar incidents.

- severity of the cuts, bruises, welts, or

                abrasions (size,

                number, depth,

                extent of

                discoloration).

- location of the cuts, bruises, welts, or abrasions.

- whether an instrument was used on the child.

- previous history of indicated abuse or neglect."

89 Ill. Adm. Code Sec. 300, Appendix B.

An educator bruising a child does not automatically justify a finding of abuse. See Korunka v. Department of Children and Family Services, 259 Ill. App. 3d 527, 631 N.E.2d 759 (1994) (bruises on student's neck and shoulder did not amount to abuse); Briggs v. State, 323 Ill. App. 3d 612, 752 N.E.2d 1206 (2001) (marks on student's neck did not amount to abuse).

We will reverse an indicated finding of abuse if it is against the manifest weight of the evidence. Korunka, 259 Ill. App. 3d at 531, 631 N.E.2d at 761. To find an agency's decision against the manifest weight of the evidence, the court must determine, after viewing the evidence in the light most favorable to the agency, that no rational trier of fact could have agreed with the agency's decision. Briggs, 323 Ill. App. 3d at 618, 752 N.E.2d at 1211.

Here, the evidence showed that a teacher's assistant with no prior indicated reports

6

or history of violence caused an aggressive and behaviorally disturbed 10-year-old student to suffer a bump on his head while taking him to the floor for the student's own safety. A review of the factors promulgated by DCFS reveals that plaintiff's actions did not amount to abuse: (1) though small for his age, K.C. was an aggressive 10-year-old child, who was not at a "greater risk of harm"; (2) despite his behavioral problems, there was no evidence that K.C. could not seek help when necessary; (3) plaintiff had no history of involvement in similar incidents; (4) K.C. suffered one small isolated abrasion or bump on his forehead; (5) plaintiff did not use an instrument to physically harm K.C.; and (6) plaintiff had never before been indicated for abuse or neglect. Thus, the decision of DCFS to indicate plaintiff for abuse was against the manifest weight of the evidence.

The agency's finding of abuse was based extensively on its conclusion that plaintiff should have taken K.C. to the designated time-out room instead of the cubby. However, the testimony established that the cubby was often used for time-outs. As a new staff member at Trewyn, plaintiff was unsure about the procedures necessary for the time-out room, so he opted to use the cubby instead. Even if plaintiff's decision to take K.C. to the cubby was not the correct one, it does not follow that he was guilty of abuse. See Korunka, 259 Ill. App. 3d at 532, 631 N.E.2d at 762.

CONCLUSION

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

SCHMIDT, PJ., specially concurring and CARTER, J., concurring.


PRESIDING JUSTICE SCHMIDT, specially concurring:

7

_____

I concur, but write separately to point out that I believe the finding by DCFS that the child was injured "by other than accidental means" was against the manifest weight of the evidence.  Therefore, DCFS did not even meet the threshold requirement for an indication of abuse.

The statute clearly provides that a child is abused when a person responsible for the child's welfare injures a child "other than by accidental means ***."  325 ILCS 5/3(a), (b) (West 2004).  It seems obvious that the injury to K.C. occurred accidentally as plaintiff was attempting to subdue the child.  DCFS argues that the injury was not accidental because the plaintiff was intentionally trying to subdue the child.  I find that argument to be equivalent to arguing that any motorist involved in an automobile crash is guilty of intentional conduct because he or she intentionally drove the car.