# Illinois Official Reports

## Appellate Court

---

*Oglesby v. Department of Children & Family Services*,
2014 IL App (4th) 130722

---

Appellate Court
Caption

SCOTT OGLESBY, Plaintiff-Appellant, v. THE DEPARTMENT OF
CHILDREN AND FAMILY SERVICES, Defendant-Appellee.

District & No.

Fourth District
Docket No. 4-13-0722

Filed

July 8, 2014

Held
(*Note: This syllabus
constitutes no part of the
opinion of the court but
has been prepared by the
Reporter of Decisions
for the convenience of
the reader.*)

The denial of plaintiff police officer's request to expunge an indicated
finding of abuse based on a substantial risk of physical injury that the
Department of Children and Family Services determined was credible
was reversed, since the officer's poor judgment in his handling of a
disruptive child did not constitute abuse and there was no evidence the
child experienced excessive fear resulting in the impairment of health
or bodily function, there was evidence that restraint was needed, and
there was no indication that plaintiff intended to harm the child.

Decision Under
Review

Appeal from the Circuit Court of McLean County, No. 11-MR-327;
the Hon. Paul G. Lawrence, Judge, presiding.

Judgment

Judgment reversed and order reversed; cause remanded with
directions.

Counsel on
Appeal

Shane M. Voyles (argued), of Springfield, for appellant.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Mary C. LaBrec (argued), Assistant Attorney General, of counsel), for appellee.

Panel

JUSTICE TURNER delivered the judgment of the court, with opinion. Presiding Justice Appleton and Justice Steigmann concurred in the judgment and opinion.

**OPINION**

¶ 1    In May 2011, plaintiff, Scott Oglesby, sought to expunge an indicated finding of abuse based on a substantial risk of physical injury that defendant, the Department of Children and Family Services (Department), had determined was credible. In September 2011, the Director of the Department accepted the administrative law judge's (ALJ's) recommendation and issued a final administrative decision denying the expungement because the finding of a substantial risk of physical injury was supported by a preponderance of the evidence. In November 2011, plaintiff sought administrative review of the Department's final order in the McLean County circuit court. Plaintiff later sought to amend his complaint to add a claim under section 1983 of the Civil Rights Act (42 U.S.C. § 1983 (2000)) based on the Department's failure to include a transcript of the witnesses' testimony at the administrative hearing in the record, but the court denied his request. Plaintiff also filed a motion to strike the Department's bystander's report of the testimony at the administrative hearing. At a July 2013 hearing, the court denied plaintiff's motion to strike and affirmed the Department's decision.

¶ 2    Plaintiff appeals, arguing (1) the administrative guideline relied upon by the Department in indicating plaintiff is void, (2) the Department failed to comply with the Administrative Review Law (735 ILCS 5/art. III (West 2010)), (3) the circuit court erred by denying plaintiff's motion to amend his complaint, and (4) the Department's decision was against the manifest weight of the evidence. We reverse the circuit court's judgment, reverse the Department's order, and remand the cause with directions.

¶ 3                                   I. BACKGROUND

¶ 4    On the afternoon of December 21, 2010, plaintiff, a regular police officer of 16 years, responded to a request for assistance with an out-of-control child at Stevenson Elementary School (School). The call for help had been made by the School principal. At the time, the School resource officer, Brian Evans, was at a different location. When plaintiff arrived, the out-of-control child, Z.W., was being restrained by the School's psychologist, Brian Corley, in a "seclusion/time-out room." Plaintiff's presence in the room was enough to get Z.W. under control. Plaintiff had no physical contact with Z.W. Plaintiff learned Z.W. had struck Meg Johnson, who was a teacher and the wife of a Bloomington police detective.

¶ 5    After talking to Z.W., plaintiff went to the hall outside Johnson's classroom. While talking to Johnson, he heard screaming and thumping noises coming from her classroom. Plaintiff thought the tantrum was getting worse so he went into the classroom and approached Corley and N.A., a seven-year-old, behavior-disordered student. Corley was restraining N.A. and, when he saw plaintiff, he let go of N.A. Plaintiff grabbed N.A., lifted him up, and said, " 'Shut up, you are giving me a headache!' " Eyewitnesses differ on where plaintiff grabbed N.A., how high plaintiff raised N.A., and for how long plaintiff held N.A. Officer Evans entered the room and told N.A. to sit in a chair. N.A. did so. It was then decided N.A. needed to go to the principal's office. N.A. refused and went limp. Plaintiff carried N.A. to the principal's office and put him in a chair.

¶ 6    On December 22, 2010, a report was made to the Department about plaintiff's actions toward N.A. After its investigation, the Department determined credible evidence supported an indicated finding of abuse against plaintiff for a substantial risk of physical injury (89 Ill. Adm. Code 300.Appendix B (Allegation 10/60), amended at 35 Ill. Reg. 2861 (eff. Feb. 8, 2011)) (hereinafter, Allegation 10). (We note a report was also made against plaintiff for his actions against Z.W., and the Department's investigation concluded that report was unfounded.) Plaintiff disagreed with the indicated finding of abuse against N.A. and sought expungement of it from the State Central Register.

¶ 7    On August 18, 2011, an administrative hearing was held on plaintiff's expungement request. The Department presented the testimony of Corley; Bloomington police department sergeant Gregory Scott; and Anna Foote, a Department child-protection investigator. The Department also presented police reports, the investigative file, and a video of the Department's interview of N.A. Plaintiff testified on his own behalf and presented the testimony of Bloomington police department lieutenant Paul Williams; Jim Scolari, long-time counselor and administrator for the Department of Rehabilitative Services; Jaclyn Orton, a social worker at the School; and Janet Jumper, a secretary at the School. According to the Department, the digital recording of the administrative hearing was lost. Accordingly, our summary of the evidence relies primarily on the ALJ's summary of the evidence in her written recommendation and opinion.

¶ 8    Corley emphasized he did not request or desire any police presence on December 21, 2010. Corley explained he and many staff members at the School had been trained to physically restrain a person in a manner that avoids injury to both the restrainer and restrainee. On the afternoon in question, Z.W.'s behavior was such that Corley believed he needed to be restrained. When plaintiff entered the room, he began talking to Z.W., and Z.W. stopped acting out. Corley released Z.W. and left the room. Since the incident involving Z.W. started in Johnson's room, Corley went there to speak with Johnson.

¶ 9    When Corley arrived in Johnson's room, Johnson was restraining N.A., who was described by school staff as a very noncompliant child with a history of kicking and hitting teachers, throwing objects, and destroying property. Johnson was having difficulties restraining N.A. because she was tired and N.A. was wearing a jacket and book bag that made it difficult to maintain a restraint. Corley took over restraining N.A. Corley believed N.A.'s tantrum was past its peak, but N.A. continued to scream and struggle. After five minutes of restraining N.A., Corley heard plaintiff come up behind him and start to " 'banter' " with N.A. Corley released his hold on N.A. and began to leave the classroom. After walking seven steps, Corley looked back and saw plaintiff grab N.A. by the neck and hold him up against the wall for 30

seconds to a minute. According to Corley, plaintiff held N.A. so high that N.A.'s head was almost at the ceiling. Plaintiff was speaking loudly at N.A. Corley went to the hallway and asked Officer Evans to see what was going on with plaintiff and N.A.

¶ 10    Sergeant Scott testified he investigated a complaint filed against plaintiff over this incident. From his interviews, he concluded N.A. had been tantruming for about 30 minutes at the end of the school day and had torn things off the wall, thrown chairs, and tried to throw a desk. The other children in the room had to be moved to a different room to protect them from N.A. At the time plaintiff entered Johnson's classroom, Orton and Therese Marinelle, a School aide, were also in the room. According to Sergeant Scott, plaintiff admitted he left Johnson and Officer Evans and went into the classroom to address N.A. Plaintiff stated he told N.A., " 'Shut up, you are giving me a headache!' " He then lifted N.A. up by the throat or front of his jacket and put him up against the wall. Plaintiff also told N.A. to calm down.

¶ 11    In his interview with the Department, N.A. admitted he had been having a " 'little fit' " that afternoon. Plaintiff grabbed him by the neck and yelled at him that N.A. was giving him a headache and N.A. needed to calm down. N.A. stated both of plaintiff's hands were on the skin of his neck when plaintiff grabbed him, and N.A. was on his "tippy toes." Plaintiff also picked him up by the waist and carried him to the principal's office, where plaintiff threw him into a chair. N.A. stated his shoulders and arms hurt after plaintiff's actions. N.A. also had some red marks on him that " 'washed away' " before anyone else saw them.

¶ 12    Lieutenant Williams testified he had supervised Sergeant Scott's investigation of the incident and had supervised plaintiff in various assignments over the years. Plaintiff had never received any complaints of this nature. Lieutenant Williams also explained resource officers undergo additional training, presumably in school protocol and children in general. According to Lieutenant Williams, plaintiff had no idea N.A. was a behavior-disordered student, and Lieutenant Williams found no evidence anyone made an effort to tell him. Lieutenant Williams also explained Corley was the least credible of the witnesses interviewed by Sergeant Scott. It was clear Corley did not like police officers and his testimony was inconsistent with the other witnesses and the videotape of the incident. Specifically, while Corley said it was at least 30 seconds before plaintiff put N.A. down, the other witnesses said it was about 5 seconds.

¶ 13    Scolari testified children with emotional and behavioral disorders are very difficult to handle if the handler lacks training. He explained some of the ways to handle such children and noted such children's behavior needs to be shut down immediately. Moreover, Scolari said it is "extremely rare" for the police to be called when such children act out because the school has trained staff that know how to deal with the situation better than the police. Last, Scolari noted that, if the police are called to deal with such a situation, they should be told they are dealing with a behavior-disordered person.

¶ 14    Orton testified about N.A.'s tantrum on December 21, 2010. Corley was restraining N.A. and had the situation under control. It was the type of situation a resource officer would not intervene in unless asked. When plaintiff entered the room, Corley released N.A. and left the room. Plaintiff approach N.A. and told him to calm down. Plaintiff then picked up N.A. " 'by the scruff' " and told him to be good. She later described plaintiff as having one hand on the back of N.A.'s coat and the other supporting the front of his shirt. She did not witness plaintiff pick up N.A. and take him to the principal's office.

¶ 15    Jumper was in the room adjoining the principal's office when appellant brought N.A. into the office by carrying him on his shoulder. N.A. was struggling, kicking, and calling plaintiff

" 'stupid cop.' " Plaintiff set N.A. in a chair in front of her, and as he did so, plaintiff had to protect himself from being kicked by N.A.

¶ 16    Plaintiff testified, when he arrived at the school, he went to the principal's office, where a woman told him where he should go. No one mentioned anything about behavior-disordered classrooms. When he entered the first room, Corley let go of Z.W. and left without saying a word. Z.W. calmed down, and plaintiff talked to him about what he had done. While they were talking, another teacher came in the room and said Z.W. had hit Johnson. Officer Evans arrived and took plaintiff to meet Johnson and to talk about Z.W.'s incident.

¶ 17    When they got to Johnson's classroom, plaintiff noticed Corley was now restraining N.A., who was screaming and struggling against the restraint. Someone said N.A. would be better if he did not see a uniformed officer, so Johnson, Officer Evans, and plaintiff stepped into the hall. As they talked, plaintiff could hear screaming from the classroom and a thumping sound like someone was kicking the wall. While Johnson and Officer Evans expressed no concern, plaintiff believed the tantrum was getting worse, so he went into the classroom. In his opinion, "it was time to act and not talk." Plaintiff admitted he did not ask Johnson and Officer Evans about N.A.'s situation. When he approached N.A. and Corley, Corley threw up his hands and started to leave without saying anything. Since the restraint had not worked, plaintiff wanted to try something different, so he grabbed the front of N.A.'s jacket. Plaintiff lifted him up to face level, and said, " 'Shut up, you are giving me a headache!' " Plaintiff also said, " 'Behave' " several times. Officer Evans entered the room and told N.A. to sit in a chair, and N.A. did so. Johnson and Officer Evans decided N.A. needed to go the principal's office. Plaintiff told N.A. to go, and N.A. said, " 'no.' " Plaintiff pulled N.A. up by the arm, and N.A. immediately went limp. Plaintiff picked up N.A., and "fireman" carried N.A. to the principal's office. Plaintiff had to protect himself as he carried N.A. because N.A. continued to flail and kick. Once in the principal's office, plaintiff put N.A. in a chair. Plaintiff then returned to Johnson's room to see if any other students were out of control. In plaintiff's opinion, his actions did not at all expose N.A. to a risk of harm.

¶ 18    In September 2011, the ALJ submitted her written recommendation and opinion. The ALJ found the Department had met its burden of proof in demonstrating by a preponderance of the evidence plaintiff "placed the three children [*sic*] in Substantial Risk of Physical Injury and therefore, [plaintiff]'s request to expunge the finding should be **DENIED**." (Emphasis in original.) On September 29, 2011, the Director of the Department accepted the ALJ's recommendation and denied plaintiff's request for expungement.

¶ 19    Plaintiff's November 2011 complaint sought only administrative review and was timely filed under section 3-103 of the Administrative Review Law (735 ILCS 5/3-103 (West 2010)). The next month, the Department filed its answer, which stated it "consist[ed] of a certified copy of the entire record of proceedings before the administrative agency whose decision is here being reviewed." The attached record contained an appendix A, which was described as a "Bystanders Report dated November 21, 2011." Appendix A states the August 18, 2011, hearing was digitally recorded, but the Department could not locate the recording. Thus, the ALJ prepared a bystander's report from the notes she took during the hearing. The record contains no evidence the Department sought leave from the circuit court to file the bystander's report.

¶ 20    On July 18, 2012, plaintiff filed a motion for leave to amend his complaint to add a count, asserting a section 1983 claim based on numerous actions by the Department, which resulted in

the loss of plaintiff's employment and damage to his reputation. The Department filed a response and objection to plaintiff's motion to amend his complaint. In February 2013, the circuit court heard arguments on plaintiff's motion to amend. The record on appeal lacks a report of proceedings for that hearing. The court denied the motion but allowed plaintiff to file another motion for leave to amend. In March 2013, plaintiff filed a second motion for leave to amend his complaint, again raising a section 1983 claim. This time the section 1983 claim was based on the actions of specific Department employees that resulted in the loss of the transcript for the August 2011 hearing. The Department again objected to the motion. After an April 2013 hearing, the court denied plaintiff's second motion to amend. Again, a report of proceedings from the April 2013 hearing is not included in the appellate record. The record on appeal does not disclose why the circuit court denied the two motions to amend plaintiff's complaint.

¶ 21 In June 2013, both parties filed briefs on the merits of this case. Plaintiff asserted proper administrative review could not take place due to the lack of a verbatim transcript and the ALJ's failure to make specific factual findings. He also asserted the Department's decision was against the manifest weight of the evidence. The Department asserted the record was adequate and its decision should be upheld. In July 2013, plaintiff filed a motion to strike the bystander's report and a reply brief.

¶ 22 On July 22, 2013, the circuit court held a hearing, at which it denied plaintiff's motion to strike the bystander's report and affirmed the Department's decision. On August 12, 2013, plaintiff filed a timely notice of appeal under Illinois Supreme Court Rule 303 (eff. May 30, 2008). Accordingly, this court has jurisdiction of this appeal under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994).

¶ 23                                    II. ANALYSIS
¶ 24                            A. Validity of Allegation 10
¶ 25 In his reply brief, plaintiff contends the administrative regulation providing for Allegation 10 (89 Ill. Adm. Code 300.Appendix B (Allegation 10), amended at 35 Ill. Reg. 2861 (eff. Feb. 8, 2011)), a substantial risk of physical injury, is void under our supreme court's decision in *Julie Q. v. Department of Children & Family Services*, 2013 IL 113783, 995 N.E.2d 977. The Department asserts plaintiff has forfeited this argument by failing to include it in his opening brief. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) (stating "[p]oints not argued are waived and shall not be raised in the reply brief"). Plaintiff asserts the Department's Allegation 10 is void, which results in the Department's judgment being against the manifest weight of the evidence. Thus, plaintiff is not raising a void-judgment argument, which is an exception to the aforementioned rule. See *In re Application of the County Treasurer*, 2012 IL App (1st) 101976, ¶ 31, 966 N.E.2d 408 (noting a void judgment may be attacked at any time). Accordingly, we agree with the Department that plaintiff has forfeited this issue by failing to raise it in his opening brief.

¶ 26                              B. Missing Transcript
¶ 27 Plaintiff raises several arguments regarding the missing transcript of the ALJ's hearing, including an allegation the failure to produce the transcript was a violation of section 3-108(b) of the Administrative Review Law (735 ILCS 5/3-108(b) (West 2010)). He also argues in his

briefs the circuit court erred by refusing to grant him leave to file an amended complaint to raise a section 1983 claim that the Department denied him due process of law by losing the transcript of the hearing. (We note plaintiff's argument on appeal challenging the denial of his motions to amend does not mention the basis for his first proposed section 1983 claim, and thus any challenge to the denial of his first motion to amend is forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013).) However, as discussed in the next section, the missing transcript does not inhibit our review of the merits of plaintiff's expungement request. Accordingly, we do not address plaintiff's arguments based on the missing transcript as our resolution of plaintiff's next argument renders those arguments moot.

## C. Abuse Finding

Under section 3(b) of the Abused and Neglected Child Reporting Act (Act) (325 ILCS 5/3(b) (West 2010)), a child is abused when a person responsible for the child's welfare "creates a substantial risk of physical injury to such child by other than accidental means which would be likely to cause death, disfigurement, impairment of physical or emotional health, or loss or impairment of any bodily function." This definition is also in the Illinois Administrative Code (Code) (see 89 Ill. Adm. Code 300.20, amended at 35 Ill. Reg. 1599 (eff. Jan. 15, 2011)). Additionally, the Code lists specific allegations of harm that must be made before the Department will accept a report of abuse. 89 Ill. Adm. Code 300.Appendix B (2011). Essentially, those specific allegations define problematic conduct. *Shilvock-Cinefro v. Department of Children & Family Services*, 2014 IL App (2d) 130042, ¶ 24, 4 N.E.3d 532. Here, plaintiff's indicated abuse finding was based on Allegation 10, which states the following:

> "Substantial risk of physical injury means that the parent, caregiver, immediate family member aged 16 or over, other person residing in the home aged 16 or over, or the parent's paramour has created a real and significant danger of physical injury that would likely cause disfigurement, death, or impairment of physical health or loss or impairment of bodily functions (abuse). This allegation of harm is to be used when the type or extent of harm is undefined but the total circumstances lead a reasonable person to believe that the child is in substantial risk of physical injury. This allegation of harm also includes incidents of violence or intimidation directed toward the child that have not yet resulted in injury or impairment but that clearly threaten such injury or impairment (abuse) or placing a child in an environment that is injurious to the child's health and welfare (i.e., domestic violence, intimidation, and a child's participation in a criminal act) (neglect). Intimidation of a child means subjecting a child to participation in or the witnessing of the physical abuse or restraint of another person when it can be used by the perpetrator to intimidate the child (e.g., this could happen to you, this will happen to you, this would happen to you)." 89 Ill. Adm. Code 300.Appendix B (Allegation 10), amended at 35 Ill. Reg. 2861 (eff. Feb. 8, 2011).

Allegation 10 further lists incidents of maltreatment, circumstances that place a child in substantial risk of physical injury, and factors to be considered. 89 Ill. Adm. Code 300.Appendix B (Allegation 10), amended at 35 Ill. Reg. 2861 (eff. Feb. 8, 2011).

In challenging the Department's denial of his expungement request, plaintiff points out the Department never made any specific findings that plaintiff's actions amount to abuse under the Act, specifically that his actions created a substantial risk of physical injury *likely to cause*

*death, disfigurement, impairment of physical or emotional health, or loss or impairment of any bodily function*. He also asserts his case is similar to our decisions in *Korunka v. Department of Children & Family Services*, 259 Ill. App. 3d 527, 532, 631 N.E.2d 759, 762 (1994), and *Briggs v. State*, 323 Ill. App. 3d 612, 619, 752 N.E.2d 1206, 1212 (2001), where we found it was against the manifest weight of the evidence to find the plaintiff's actions amounted to abuse under the Act.

¶ 31 Recently, the Second District reviewed some of the case law addressing indicated findings and specific allegations, including our decisions in *Korunka* and *Briggs*, as well as *Walk v. Department of Children & Family Services*, 399 Ill. App. 3d 1174, 926 N.E.2d 773 (2010). *Shilvock-Cinefro*, 2014 IL App (2d) 130042, ¶¶ 25-28, 4 N.E.3d 532. It concluded the cases illustrated "(1) abuse cases must be decided on their unique facts and circumstances; (2) a bad decision will not always constitute abuse; and (3) while the allegation of harm must be proven, the Act cannot be ignored." *Shilvock-Cinefro*, 2014 IL App (2d) 130042, ¶ 29, 4 N.E.3d 532. With regard to the last finding, the Second District explained "an indicated finding of abuse should be made where there is a specific harm as described in appendix B that results in abuse as described in section 3 of the Act." *Shilvock-Cinefro*, 2014 IL App (2d) 130042, ¶ 29, 4 N.E.3d 532. Thus, "a finding that an allegation of harm is proven cannot be sufficient on its own to find abuse." *Shilvock-Cinefro*, 2014 IL App (2d) 130042, ¶ 29, 4 N.E.3d 532.

¶ 32 As in *Shilvock-Cinefro*, 2014 IL App (2d) 130042, ¶ 30, 4 N.E.3d 532, the ALJ in this case failed to apply the Act as it made no findings the Department had proved by a preponderance of the evidence plaintiff's actions against N.A. created a substantial risk of physical injury, by other than accidental means, which would be likely to cause death, disfigurement, impairment of physical or emotional health, or loss or impairment of any bodily function. See 325 ILCS 5/3(b) (West 2010). Moreover, we need not remand for a finding applying the Act because, on the record we do have, any finding of abuse would be clearly erroneous.

¶ 33 Here, the ALJ found the evidence showed N.A.'s shoulders hurt after the incident with plaintiff. The marks N.A. received from the incident were gone before anyone beside N.A. saw them and are not even mentioned by the ALJ in her discussion and conclusions of law. The majority of the ALJ's findings focused on the fact plaintiff made an inexplicable and poor decision in intervening in the school staff's handling of N.A. and then in his handling of N.A. As stated earlier, a bad decision does not necessarily constitute abuse. *Shilvock-Cinefro*, 2014 IL App (2d) 130042, ¶ 29, 4 N.E.3d 532. On appeal, the Department contends picking one up off his feet is inherently destabilizing and anxiety-producing, which would cause fear. However, the record contains no evidence of excessive fear resulting in the impairment of health or bodily function or a substantial risk of such. It also argues plaintiff's actions were clearly violent because he seized the child and pinned him against the wall. However, that assertion ignores the fact the child was in need of restraint as evidenced by the fact he had been restrained by School staff for around 30 minutes prior to plaintiff's actions and then continued to act out even after being released by plaintiff. Moreover, none of the witnesses believed plaintiff intended to hurt N.A. The evidence we have before us does not show plaintiff's actions rose to the level of creating a substantial risk of death, disfigurement, impairment of health, or loss of bodily function.

¶ 34                    III. CONCLUSION

¶ 35        For the reasons stated, we reverse the McLean County circuit court's judgment as well as the Department's order. We remand the cause to the Department for expungement of the indicated finding against plaintiff.

¶ 36        Judgment reversed and order reversed; cause remanded with directions.